**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>ROCIO AURORA RYAN,<br><br>    Defendant. | 2:08-cr-00227-RJC-LRL-1<br><br>**ORDER** |

In March 2010, Defendant Rocio Aurora Ryan pled guilty to one count of federal program bribery for purchasing false IDs from Nevada DMV employee Marilyn Millender. (Minutes of Proceedings, ECF No. 20.) Her guilty plea was part of an agreement with the Government to cooperate in providing information and testifying against Ms. Millender. She was ultimately sentenced to six months in prison followed by one year of supervised release. (J., ECF No. 25.)

Now pending before the Court is a petition for writ of error coram nobis, in which Ms. Ryan seeks to vacate her conviction due to an impending threat of deportation. (Pet., ECF No. 39.) Ms. Ryan asserts that she would not have accepted her plea agreement but for her attorney's affirmative representations that her conviction in this case would remain sealed and therefore would not lead to immigration-related consequences. For the reasons given herein, the Court denies the petition.

## I. LEGAL STANDARDS

"[W]hereas petitions for habeas corpus relief and motions for relief under 28 U.S.C. § 2255 may only be filed by persons who are in government custody, the writ of error coram nobis affords a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody." *United States v. Kwan*, 407 F.3d 1005, 1009–10 (9th Cir. 2005) (citation omitted), *opinion amended on reh'g*, No. 03-50315, 2005 WL 1692492 (9th Cir. July 21, 2005), *and abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356 (2010). "Specifically, the writ of coram nobis provides a remedy for those suffering from the lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact and egregious legal errors." *Estate of McKinney By and Through McKinney v. United States*, 71 F.3d 779, 781 (9th Cir. 1995) (brackets omitted). The writ is a "highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." *United States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007).

To qualify for coram nobis relief, a petitioner must show that four requirements are satisfied: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *United States v. McClelland*, 941 F.2d 999, 1002 (9th Cir. 1991). Generally speaking, ineffective assistance of counsel has been recognized by the Ninth Circuit as an "error of the most fundamental character." *See, e.g.*, *Kwan*, 407 F.3d at 1014.

## II. DISCUSSION

As explained in *United States v. Chan*, 792 F.3d 1151 (9th Cir. 2015), because Ms. Ryan alleges her attorney affirmatively misled her regarding the immigration consequences of her guilty plea, this case is controlled by *Kwan*. *See Chan*, 792 F.3d at 1154–58. In *Kwan*, the Ninth

Circuit analyzed a coram nobis petition based on a claim of ineffective assistance of counsel ("IAC"). The panel applied the IAC test of *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner must prove: "1) that his counsel's performance fell below an objective standard of reasonableness, and 2) that the deficiency in his counsel's performance prejudiced him." *Kwan*, 407 F.3d at 1014–15. The panel held that the first prong of the *Strickland* test is satisfied where an attorney makes affirmative misrepresentations, or provides incorrect answers to specific inquiries from a client, regarding the immigration consequences of a guilty plea. *Id.* at 1015 ("[W]here, as here, counsel has not merely failed to inform, but has effectively misled, his client about the immigration consequences of a conviction, counsel's performance is objectively unreasonable under contemporary standards for attorney competence.").[1]

Here, Ms. Ryan alleges that her former attorney David Brown affirmatively told her "that part of the plea bargain included a plea that the case and transcripts would be under seal and that sealing the record would prohibit Immigration authorities from discovering the crime for which she pleaded guilty." (Pet. Writ Coram Nobis 4, ECF No. 39.) As shown *infra*, however, these allegations are directly contradicted by Ms. Ryan's sworn statements at her arraignment and plea hearing, and as such cannot be accepted by this Court as sufficient to warrant an evidentiary hearing on the matter. Furthermore, the Court denies the request for evidentiary hearing because it is confident that all pertinent information is already before it. At the motion hearing on August 13, 2018, the Government represented that it had nothing additional to present at an evidentiary hearing. The Court also has the affidavits of Ms. Ryan and her attorneys, and is apprised of the

---

1  To the extent Ms. Ryan raises a failure-to-advise argument, *Padilla* is of no help to her, because the opinion was issued after her conviction became final and is not retroactively applicable. *See generally Padilla v. Kentucky*, 559 U.S. 356 (2010); *see also Chaidez v. United States*, 568 U.S. 342, 358 (2013) (stating that "defendants whose convictions became final prior to *Padilla* . . . cannot benefit from its holding"). Accordingly, *Kwan* is the controlling case.

content of the testimony Ms. Ryan would present at an evidentiary hearing (i.e., that her testimony would directly contradict the sworn statements she made at her plea colloquy). Therefore, the record would not be further developed by an evidentiary hearing.

Ultimately, Ms. Ryan's petition must be denied because she has failed to make adequate allegations of prejudice, as required under the second prong of the *Strickland* test. "In the *Strickland* prejudice analysis, the determinative question is whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kwan*, 407 F.3d at 1017. In the context of her guilty plea, therefore, Ms. Ryan must show that but for Mr. Brown's incorrect advice, she would not have pleaded guilty and would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372.

Here, Ms. Ryan cannot make the necessary showing.

### a. Ms. Ryan understood the plea and sentencing proceedings.

In the briefs and affidavits supporting Ms. Ryan's writ petition, much is said of her inability to understand her criminal proceedings and difficulty in communicating with her English-speaking attorney. She states that her English was poor, that her attorney did not speak Spanish, and that she was not aware she could request an interpreter for court proceedings. She asserts that she did not understand this Court's questions to her during her plea and sentencing, but simply agreed with whatever the Court said when nudged by Mr. Brown. And Ms. Ryan's counsel bemoans the Court's failure to provide an interpreter. However, the Court specifically asked Ms. Ryan, who was under oath at the time, whether she understood English adequately or needed an interpreter:

///

> THE COURT: And just for the record, do you fully read, write and understand the English language? Good enough to proceed today? In other words, do you need an interpreter or can you understand what we're saying?
> THE DEFENDANT: I understand what you're saying.
> THE COURT: Okay. Very good. If at any time you don't understand, please stop me, I'll let you confer with your attorney.
> THE DEFENDANT: Okay.

(Arraignment and Plea Tr. 6:4–12, ECF No. 37.)

Furthermore, Ms. Ryan's answers at the plea colloquy, as well as her own personal statement at the sentencing hearing, reflect an adequate understanding of the proceedings, and when she did not fully understand something, she asked the Court for clarification:

> THE COURT: And you understand that there is a presumption of innocence during any such trial. That is, the government has to prove your guilt, you don't have to prove your innocence, and they have to do it by competent evidence and beyond a reasonable doubt. Do you understand that?
> THE DEFENDANT: Not very clearly what you're saying.
> THE COURT: [Provides further clarification.] Do you understand that right?
> THE DEFENDANT: Yes.

(*Id.* at 10:16–11:8.)

### b. Ms. Ryan understood the terms of her plea agreement and was informed of the immigration consequences of her guilty plea.

While still under oath, and having been advised by the Court of her obligation to answer honestly and completely, Ryan stated during the plea colloquy that she understood her guilty plea could affect her ability to prevent a deportation:

> THE COURT: And, counsel, I won't ask the defendant, but she is not a U.S. citizen; is that correct?
> MR. BROWN: That is correct.
> THE COURT: You understand that the guilty plea and adjudication, the judgment, could also affect your deportation rights. Do you understand that? It may limit your rights to withstand, to put off, a deportation. Do you understand that?
> THE DEFENDANT: Yes.

/ / /

(*Id.* at 17:17–18:2.) She also represented that she had read and understood the plea agreement, and stated without equivocation that no one made any promise other than what is contained in the plea agreement to cause her to plead guilty. (*Id.* at 18:17–21:6.) Indeed, the plea agreement itself provided: "The parties agree that no promises, agreements, and [sic] conditions have been entered into other than those set forth in this plea memorandum, and not [sic] will be entered into unless in writing and signed by all parties." And to be sure, the plea agreement is silent regarding whether Ms. Ryan's case would be perpetually sealed, and contains no promise regarding immigration consequences whatsoever. However, Ms. Ryan now contradicts her sworn statement by claiming that Mr. Brown did, in fact, make additional promises about what the plea agreement guaranteed, and that she relied on those promises, which were undisclosed to the Court and which Ms. Ryan denied at colloquy.

The immigration consequences of her conviction were further highlighted at the sentencing hearing:

> THE COURT: Conviction for a felony doesn't make her subject to deportation, does it?
> MR. BROWN: It certainly does, your Honor.
> THE COURT: It does?
> PROBATION OFFICER: It certainly may, your Honor.

(Sentencing Tr. 24:16–20, ECF No. 24.) When asked whether Ms. Ryan's conviction carried with it a threat of deportation, Mr. Brown answered definitively, without hesitation, that it did. Therefore, the record clearly shows that, throughout the entire process, Ms. Ryan was apprised multiple times that her felony conviction could lead to deportation, not only by the Court, but also by Mr. Brown.

Ms. Ryan's own sworn statements establish her understanding, at the time of entering her guilty plea, that the plea would subject her to removal. "[A]nswers contained in the plea proceeding are binding, [and] a court cannot allow a defendant to disavow the answers he gave

as easily as he wishes." *United States v. Miller*, 3 F. Supp. 2d 376, 380 (W.D.N.Y. 1998) (internal quotation marks and brackets omitted) (quoting *United States v. Winston*, 34 F.3d 574, 578 (7th Cir. 1994)). "Statements at a plea allocution carry a strong presumption of veracity," and "[a] defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997). Here, all of Ms. Ryan's allegations (e.g., that she didn't understand court proceedings, that she didn't understand her plea agreement, or that she based her agreement on the terms of the plea itself and on no other promises) are mere contradictions of explicit statements she made during her Rule 11 hearing. "Society has a strong interest in the finality of guilty pleas." *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989). Accordingly, allegations that simply contradict a defendant's earlier statements made under oath at her Rule 11 hearing are not sufficient to warrant the extraordinary remedy of coram nobis relief. *See United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir. 1992) (considering a motion to withdraw guilty plea). To hold otherwise would undermine the very purposes of Rule 11, and render the plea colloquy pointless.

   **c. Ms. Ryan quickly and fully confessed to her crimes, and thus had virtually no chance of prevailing at trial.**

Perhaps the most persuasive consideration in Ms. Ryan's case, however, is her immediate confession and cooperation with federal authorities. The record plainly establishes, through statements of Assistant United States Attorney Paul Padda, Mr. Brown, and Ms. Ryan herself, that Ms. Ryan made a full confession upon first being contacted by the FBI:

> MR. PADDA: When Ms. Ryan was first confronted by the FBI, she readily admitted her conduct, admitted guilt and stated that she would cooperate fully with the government's investigation.

(*Id.* at 14:16–19.)

> MR. BROWN: And the second the officers came to talk to her, she didn't try to—she didn't conceal anything, your Honor. She went right up to the officers. She said, "This is exactly what I did. This is what I have." Like she said, she had notes. She held on to things. "Let me give you everything I have. Let me cooperate in every way I can." And that's before she had an attorney. That's her conscience.

(*Id.* at 24:7–13.)

> THE DEFENDANT: Well, I have said since the beginning of this case that I was guilty because when I start to talk to the FBI and they put everything together and I realized that was wrong, of course I said I was guilty somehow.

(*Id.* at 28:6–9.)

Ms. Ryan made her confession before she was represented by Mr. Brown, and thus her incriminating statements to authorities were in no way influenced by any advice or misadvice from her attorney. Depending upon the circumstances, perhaps Mr. Brown would have advised Ms. Ryan not to speak to the FBI. Perhaps not. He didn't have that chance, however, and the reality is that Ms. Ryan's open and immediate confession and cooperation with the government would have constituted overwhelmingly convincing evidence of her guilt at trial.

Accordingly, insisting on a trial would have resulted in a much harsher result for Ms. Ryan. At sentencing, Ms. Ryan received a total offense level of 10 and criminal history category of I. Pursuant to the plea agreement, her offense level included a two-level reduction for acceptance of responsibility, and the Government moved for a further two-level downward departure for her cooperation in the investigation and prosecution of Ms. Millender. The Court applied both downward adjustments, after which the sentencing range was determined to be six to twelve months. The Court imposed a minimum guideline sentence of six months, followed by one year of supervised release. However, had she rejected the plea agreement and been convicted at trial, Ms. Ryan would not have received the reduction based on acceptance of responsibility, and the Government would have had no obligation to recommend any downward departure. With

a total offense level of 14, therefore, Ms. Ryan would have faced a guideline sentence between 15 and 21 months.[2]

In conclusion, because Ms. Ryan's sworn statements establish that she made her guilty plea with knowledge and understanding of the immigration consequences of a conviction, and because her full and voluntary confession left her with essentially no chance of succeeding at trial, the Court finds, based on all the circumstances, that it would not have been rational for Ms. Ryan to reject her plea agreement. Accordingly, Ms. Ryan has failed to establish that the alleged deficiency in Mr. Brown's performance prejudiced her, *see Kwan*, 407 F.3d at 1014–15, and her petition must be denied.

## CONCLUSION

IT IS HEREBY ORDERED that the petition for writ of error coram nobis (ECF No. 39) is DENIED.

IT IS SO ORDERED.

_____
ROBERT C. JONES
United States District Judge
August 14, 2018.

---

[2] The Court clarifies that it is not denying Ms. Ryan's petition merely because she failed to demonstrate that she would have "fared better at trial or successfully negotiated a more favorable plea deal." *See United States v. Chan*, No. 16-55469, 2018 WL 1835321, at *2 (9th Cir. Apr. 18, 2018). However, the less favorable outcome she very likely would have faced is relevant to the Court's determination of whether it would have been "rational under the circumstances" to reject the plea bargain. *See Padilla*, 559 U.S. at 372.